UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS JEROME MILLER,

        Petitioner,                      Case Number: 07-10441

v.                                          HONORABLE PAUL D. BORMAN

BLAINE LAFLER,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

Petitioner Marcus Jerome Miller, through counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, challenges his convictions for second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

**I. BACKGROUND**

Petitioner's conviction arises from the shooting death of Christopher Grayer in the city of Detroit on September 20, 2003.

Leroy Graves testified that, on September 20, 2003, he and his girlfriend Sharon Hunt, were driving to a dollar store near the intersection of Mack and Seyburn Streets. He and Hunt were sitting outside the store when he saw Petitioner exit a black car, approach Grayer, and fire a rifle at him. Grayer fell to the ground. Graves testified that he heard four shots. Graves drove away from the scene, but was followed by Petitioner. Graves drove to a police station where he

informed an officer that he had been chased by an individual in another car and was frightened. Graves, however, did not inform the officer that he had witnessed a shooting. At trial, he explained that he failed to mention the shooting because he was fearful he would be placed in jail if he mentioned that information. The following morning, he made what he thought was an anonymous call to the police station indicating that Petitioner was the shooter. Police promptly called him back and asked him to come to the station to give a statement.

Sharon Hunt testified that she was with Graves outside the dollar store on September 10, 2003. Before exiting the car, she heard four or five gunshots. She did not see the shooter. As she and Graves were driving away, Petitioner followed them. He then pulled up alongside them and looked at them in a way she interpreted to be threatening.

Detroit police officer George Pajor responded to the scene of the shooting. He found Grayer lying on the ground with a gunshot wound to his back. A crowd had gathered around Grayer. One person told Office Pajor that he had witnessed a burgundy minivan carrying two black males being driven away from the scene.

Deputy Chief Medical Examiner Dr. Cheryl Loewe testified that Grayer died from a single gunshot wound to the back.

The defense theory was that Graves falsely implicated Petitioner in the murder of Grayer because several months earlier Petitioner had been tried and acquitted for the murder of Graves' brother Marcus Graves. The defense posited that Graves, nevertheless, maintained a belief that Petitioner had murdered his brother and, therefore, sought to implicate him in Grayer's murder.

Larry Thomas testified that he was standing with Grayer when he was shot. He testified that the gunshots came from a burgundy van.

Regina Hollis testified that she was inside her home on September 10, 2003 when she heard three gunshots. She ran outside and saw a maroon minivan speeding away.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. On May 12, 2004, he was sentenced to 25 to 45 years' imprisonment for the murder conviction, 2-1/2 to 7-1/2 years' imprisonment for the felon-in-possession conviction, and 2 years' imprisonment for the felony-firearm conviction.

Petitioner appealed as of right to Michigan Court of Appeals, raising the following claims:

> I. The court denied Defendant his Sixth Amendment right of confrontation when, over defense objection, the medical examiner who performed the autopsy and authored the autopsy report was not called to testify, and his report was introduced into evidence through the testimony of another witness.
>
> II. Defendant was denied his due process right to a fair and impartial jury when the court prevented defense counsel from eliciting during voir dire the information necessary to developing a rational basis for excluding jurors.
>
> III. The court abused its discretion when it declined to order a mistrial after the prosecutor elicited testimony from Leroy Graves that he had been threatened not to testify, and the prosecutor engaged in misconduct when he argued to the jury that Mr. Graves feared Defendant Miller.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Miller*, No. 255941 (Mich. Ct. App. June 28, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Miller*, 474 Mich. 1055 (Mich. Jan. 31, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the

following claims:

> I. The court denied Defendant his Sixth Amendment right of confrontation when, over defense objection, the medical examiner who performed the autopsy and authored the autopsy report was not called to testify, and his report was introduced into evidence through the testimony of another witness.
>
> II. Defendant was denied his due process right to a fair and impartial jury when the court prevented defense counsel from eliciting during voir dire the information necessary to developing a rational basis for excluding jurors.

**II. STANDARD OF REVIEW**

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

---

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

*Id.* at 409-11.

## III. ANALYSIS

Petitioner argues that habeas relief should be granted because his rights under the Confrontation Clause were violated when the autopsy report was admitted into evidence, because the medical examiner who authored the report was not called to testify.  The report was prepared by an assistant medical examiner, Dr. Pietak.  Dr. Cheryl Loewe, Deputy Chief Medical Examiner for Wayne County, testified as to the contents of the report.  Dr. Pietak was apparently unavailable to testify.

Respondent argues that this claim is procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment."  *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to

protect . . . from erosion." *Id.*, at 404-05 (internal quotation omitted).  The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, *quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965).

In *Crawford v. Washington*, 541U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable.  While the Supreme Court declined to "spell out a comprehensive definition of 'testimonial,'" the Court held that business records "by their nature" are non-testimonial.  *Id.* at 56.  *See also id. at* 76 ("To its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records.") (Rehnquist, C.J. concurring).

Several courts addressing this issue have held that autopsy reports are made in the course of a regularly conducted business and are non-testimonial under *Crawford*.  *See United States v. Feliz*, 467 F.3d 227, 236-37 (2d Cir. 2006), *cert. denied sub nom Erbo v. United States,* ___ U.S. ___, 127 S. Ct. 1323 (2007); *Smith v. McDonough*, 2008 WL 2941149, *13 (S.D. Fla. July 29, 2008); *Rogovich v. Schriro*, 2008 WL 2757362, *6 (D. Ariz. July 14, 2008).  In this case, Dr. Loewe testified that the autopsy report prepared by Dr. Pietak was made in the ordinary course of business.  This Court holds that the autopsy report was a business record and, therefore, non-testimonial in nature.  Therefore, its admission did not violate *Crawford.*

Petitioner next claims that he was denied his right to a fair and impartial jury when defense counsel was prohibited from eliciting during *voir dire* the information necessary to develop a rational basis for excluding jurors. Specifically, defense counsel sought to ask jurors whether they would be biased against Petitioner because he had previously been charged with and acquitted of murder.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to an impartial jury is made applicable to the states by the Fourteenth Amendment. *Turner v. Louisiana*, 379 U.S. 466 (1965). Jury *voir dire* "is designed 'to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003).

"The Constitution . . . does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). Nevertheless, "part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Id.* Supervision of *voir dire*, for the most part, is left to a trial courts "sound discretion." *Ristaino v. Ross*, 424 U.S. 589, 594 (1976), *quoting Connors v. United States*, 158 U.S. 408, 413 (1895). The exercise of the trial court's discretion is "subject to he essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931). "The Constitution requires only that *voir dire* be conducted in a manner which ensures fundamental fairness." *Dennis*, 354 F.3d at 524.

The Michigan Court of Appeals held that Petitioner waived his claim that the jury *voir dire* was improperly conducted when his attorney expressed satisfaction with the jury selected.

8

*Miller*, slip op. at 1.  Respondent argues that this claim, therefore, is procedurally defaulted.  The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994); *see Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002).  At the time the Michigan Court of Appeals issued its opinion, the contemporaneous-objection rule regarding *voir dire*-related claims was an adequate, independent, and regularly followed state court rule.  *See People v. Hubbard*, 217 Mich. App. 459, 466-67 (1996).  Therefore, in order for this Court to consider the merits of this claim, Petitioner must establish cause and prejudice or a miscarriage of justice.

Petitioner fails to allege cause to excuse the procedural default of this claim. Thus, this claim is procedurally defaulted unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id.* at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.*

Petitioner has not supported his allegation of constitutional error with new reliable evidence of actual innocence that was not presented to the trial court. Accordingly, Petitioner's claim that his constitutional rights were violated by the trial court's administration of *voir dire* is procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the Court has carefully reviewed the case record and the relevant law, and concludes that it is presently best able to decide whether to issue a COA. *See id.* at 901-02 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.) (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997),

*overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997)).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal quotation omitted). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: January 16, 2009

11

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 16, 2009.

                                              S/Denise Goodine
                                              Case Manager